UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

C'QUAN HINTON,

                Petitioner,                Case No. 13-14584

v.

                                          HON. AVERN COHN

DUNCAN McLAREN,

                Respondent.

_____/

**MEMORANDUM AND ORDER**
**DENYING PETITION FOR WRIT OF HABEAS CORPUS**
**AND**
**DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Petitioner C'Quan Hinton, ("Petitioner"), proceeding pro se, was convicted in state court of first-degree murder, M.C.L. § 750.316(1)(a)); assault with intent to commit murder, M.C.L. § 750.83; and carrying a concealed weapon, M.C.L. § 750.227. Petitioner is serving a life sentence for the murder conviction, 15-to-30 years for the assault conviction, and 1-to-5 years for weapon conviction. The petition raises three claims: (1) Petitioner's right to a public trial was violated by the repeated exclusion of members of the public during trial, (2) Petitioner's right to be present at critical stages of trial was violated when he was absent during the trial court's interview with the jurors, and (3) Petitioner was denied the effective assistance of trial counsel. For the reasons that follow, the petition will be denied for lack of merit.

II. Background

The Court recites the facts relied upon by the Michigan Court of Appeals in affirming Petitioner's conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). See Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009):

> Evidence was presented at trial that defendants Christian and Hinton approached 14–year–old Robert Person on October 9, 2007, while Person was walking with Jarylle Murphy in the vicinity of the Regency apartment complex in Flint. Christian and Hinton accused Person of being a "snitch" and threatened to "get" him for snitching. Person was still with Murphy later in the day when Murphy saw all four defendants behind them. Murphy explained that he looked back because he is self-conscious about people being behind him. Murphy spoke to Person and then looked back at the group a second time. He saw the defendants pull out guns. Murphy ran away and heard gunshots as he was running. Person died from multiple gunshot wounds. A 7.62 by 39 millimeter fired bullet was recovered from Person's body during an autopsy.
>
> The police later recovered a .38 caliber gun that was linked to shell casings that were found at the scene of the shooting. That gun belonged to William Harris's girlfriend, but the prosecution presented evidence that defendant Christian hid the gun behind a gas station following a different shooting incident on October 13, 2007, during which Perry Manuel was shot while operating a vehicle in which defendant Christian was a passenger. On October 16, 2007, Murphy viewed a photographic lineup and identified defendant Hinton as one of the persons in the group who shot Person. In November 2007, Murphy identified the other three defendants in photographic lineups.
>
> Robert Moore, who was lodged in jail with defendants Christian and Joshun after they were arrested, testified at trial that defendants Christian and Joshun both told him that they had killed Person and that both sought his help in killing Murphy. Another prosecution witness, Ashlie Dye, who was familiar with defendant Christian and was in the area where Person was shot, testified that she saw defendant Christian shooting at Person.
>
> Defense proofs indicated that three of the defendants ended up at the Terrace apartments, which is located south of the Regency apartment complex, on the night of the shooting. Defendant Dartanion presented evidence that he was with two friends when the shooting occurred, and that they eventually drove to the Terrace apartments, where Dartanion's brother Joshun told them about a boy being killed in front of the Regency

> apartment complex. Defendant Joshun presented evidence that he was in the parking lot at the Terrace apartments when the shooting occurred, and that he learned about the shooting from Mickey Jones, who was at the Terrace apartments. Defendant Joshun also stated that he spoke with defendant Hinton while Joshun was in the parking lot. Defendant Christian presented evidence that he was selling drugs on the night of the shooting. He testified that Manuel, Harris, and a person known as "Pooh Bear" were present, but that these individuals left with guns after receiving a telephone call. Various witnesses also testified regarding Harris and Manuel making statements about shooting Person. Jesse Mays testified that he killed Manuel, but it was determined to be a justifiable homicide. Mays testified that Manual told him approximately three weeks before he died that he had shot Person and that all four defendants were innocent.

People v. Christian, No. 294871, 2011 WL 4424347, at *1-2 (Mich. Ct. App. Sept. 22, 2011).

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals, raising the following claim:

> I. Was Defendant denied the effective assistance of counsel by his attorney's failure to object to the admission of hearsay statements where the statements (1) were ostensibly introduced for the purpose of impeaching a witness; (2) were relevant to the central issue in the case; and (3) the impeached witness presented no other testimony in the case rendering his credibility relevant?

Petitioner also filed a supplemental pro se brief, raising the following additional claims:

> I. The trial court violated Appellant's due process rights by denying a motion for mistrial, after the prosecution's key witness disclosed to the jury that Appellant had failed a polygraph examination.
>
> II. Clear reversible error occurred when the trial judge admitted irrelevant and highly prejudicial police opinion testimony as to the credibility of prosecution witness and the guilt of the defendants.
>
> III. The trial court judge erred by ex parte closing the courtroom thus denying the Defendant/Appellant a public trial.
>
> IV. The trial court erred when it ex parte barred the Defendant/Appellant

and his attorney from the courtroom during a hearing and a critical state of the proceeding.

V. The Defendant/Appellant was denied the right to a fair and impartial jury.

VI. The Defendant's right to the effective assistance of counsel was violated because of the attorney's (1) failure to call the Defendant's alibi witness, (2) failure to interview potential witnesses, (3) failure to call expert witnesses, (4) failure to conduct an investigation and (5) failure to timely object to the closure of the courtroom.

Petitioner's appeal was consolidated with his co-defendants' appeals. The Michigan Court of Appeals affirmed Petitioner's's conviction in an unpublished opinion. People v. Christian, No. 294871, 2011 WL 4424347 (Mich. Ct. App. Sept. 22, 2011).

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims as in the Michigan Court of Appeals, with the exception of parts of his pro se fifth and sixth claims. The Michigan Supreme Court denied Petitioner's application for leave to appeal because it was not persuaded that the questions presented should be reviewed by the Court. People v. Hinton, 492 Mich. 864 (2012) (unpublished table decision).

### III. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law,

> as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam), quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) quoting Williams, 529 U.S. at 413. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011), quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87 (internal quotation omitted).

5

To obtain relief under § 2254(d)(2), a petitioner must show an unreasonable determination of fact and that the resulting state court decision was "based on" that unreasonable determination. Rice v. White, 660 F.3d 242, 250 (6th Cir. 2012). However, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998).

IV. Analysis

A. Public Trial

Petitioner first claims that his right to a public trial was violated by the exclusion of the public from the courtroom.[1] The trial court twice closed the courtroom to the public after the jury began its deliberations. The first time was to interview a single juror who had indicated that she feared for her safety. The second time was to interview the remaining jurors concerning whether this juror's expressions of fear had tainted their ability to be fair and impartial.[2] Respondent contends that Petitioner's public-trial claim is waived because Petitioner's counsel failed to object to the closures of the courtroom.

---

[1]One of Petitioner's co-defendants, Kino Christian, raised the identical claim on habeas review. The district court found that Christian waived his right to a public trial by failing to object to the closures, that the claim was procedurally defaulted, and that this counsel was not ineffective for failing to object to the closures. See Christian v. Hoffner, No. 13-CV-11491, 2014 WL 5847600, *4-13 (E.D. Mich. Nov. 12, 2014). The Court agrees with the reasoning and result in Christian, as supplemented herein.

[2]Petitioner also refers to a closure of the courtroom during the jury selection process. The Court has reviewed the trial record and can find no support for the allegation that the courtroom was closed during that period. This claim is therefore denied because it is not supported by the record.

The Michigan Court of Appeals concluded that the claim was subject to plain error review because no objection was raised at trial. The court of appeals then found that relief was foreclosed because, as a matter of state law, the right to a public trial is not self-executing and the fact that no objection was made precluded any finding of plaint error.

The fact that the Michigan Court of Appeals engaged in plain-error review of Petitioner's public-trial claim does not constitute a waiver of the state procedural default. Seymour v. Walker, 224 F.3d 542, 557 (6th Cir. 2000) ("Controlling precedent . . . indicates that plain error review does not constitute a waiver of state procedural default rules."). Instead, the Court should view the state appellate court's review of Petitioner's claim for plain error as "enforcement of [the] procedural default." Hinkle v. Randle, 271 F.3d 239, 244 (6th Cir. 2001). Rather than consider the claim procedurally defaulted, the Court will address it on the merits because Petitioner alleges ineffective assistance of counsel as cause to excuse any default.

The Sixth Amendment public-trial guarantee generally prevents a court from excluding members of the public from criminal trials. Waller v. Georgia, 467 U.S. 39, 46 (1984). The violation of the constitutional right to a public trial is a structural trial error, not subject to the harmless-error analysis. Id. at 49-50, n. 9. Although the right to a public trial is a fundamental right, it can be waived if a defendant either acquiesces in the closure of the courtroom or fails to object. Peretz v. United States, 501 U.S. 923, 936–937 (1991) (noting that, among the most basic rights of criminal defendants that are subject to waiver, failure to object to the closing of a courtroom constitutes "waiver of right to public trial"). The Sixth Circuit is in agreement. See Johnson v. Sherry, 586

7

F.3d 439, 444 (6th Cir. 2009), cert. denied 131 S. Ct. 87 (2010) (citing Freytag v. Comm'r, 501 U.S. 868, 896 (1991) ("The Sixth Amendment right to a trial that is 'public,' provides benefits to the entire society more important than many structural guarantees; but if the litigant does not assert it in a timely fashion, he is foreclosed." (brackets omitted))).

Here, the record shows that Petitioner's counsel expressly waived the right to a public trial during the proceedings in question, and Petitioner has failed to show by clear and convincing evidence that the record is incorrect. Thus, he is not entitled to relief as a matter of federal law.

Moreover, the fact that Petitioner himself did not expressly agree on the record to the exclusion of the public from the questioning of the various jurors does not alter this analysis. The Sixth Circuit, in Johnson v. Sherry, essentially acknowledged that the petitioner's right to a public trial had been waived by counsel's failure to object to the closure of the courtroom. 586 F.3d at 444, 446. The Supreme Court has yet to hold that an attorney "cannot waive his client's right to a public trial." Guyton v. Butler, 490 F. App'x 331, 333 (11th Cir. 2012). Given the AEDPA standard, the absence of controlling Supreme Court precedent precludes Petitioner from obtaining habeas relief.

Petitioner's related claim that trial counsel was ineffective for failing to object to the closure of the courtroom must also fail. To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

8

Strickland v. Washington, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a "strong presumption" that counsel's behavior lies within the "wide range of reasonable professional assistance." Id. at 689. Second, the defendant must show that such performance prejudiced his defense. Id. at 687. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Under Waller, to justify the closure of a courtroom, "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." Waller, 467 U.S. at 48.

Here, it is clear from the record that the trial court believed that there were compelling reasons for the brief closures of the courtroom, any objection by trial counsel would have been overruled. Thus, Petitioner cannot show that trial counsel performed deficiently for failing to object to the closure of the courtroom to interview Juror 11 or the remaining jurors. See Johnson v. Sherry, 465 F. App'x 477, 481 (6th Cir. 2012) (affirming district court's denial of petition regarding the petitioner's ineffective assistance arising out of counsel's consenting to the closure of the courtroom given that the interest in closure so "was compelling, the judge would likely have overruled the objection, and the court of appeals would have likely affirmed").

Moreover, assuming that trial counsel was deficient for failing to object to the closures of the courtroom, Petitioner has failed to show that he was prejudiced by

9

counsel's failure to object. The Michigan Court of Appeals so held, see Christian, 2011 WL 4424347, at *10 (holding that Petitioner "failed to overcome the presumption that trial counsel's decisions pertaining to any exclusion of the public from the courtroom constituted sound trial strategy," and failed "to demonstrate prejudice"), and that decision is not inconsistent with any Supreme Court decision.

Finally, Petitioner argues that because the denial of the right to a public trial is a structural error, prejudice should be presumed. That argument, however, is not supported by clearly established Supreme Court law. As such, he cannot obtain habeas relief on this ground.

Overall, Petitioner is not entitled to relief on his claim regarding a public trial.

### B. Petitioner's Right to be Present at Critical Stages

In his second claim, Petitioner contends that his right to be present at all critical stages of the criminal proceedings was violated when he was absent from the courtroom when the trial court questioned Juror 11, and subsequently questioned and instructed the remaining jurors. As part of his third claim, Petitioner argues that trial counsel was ineffective for failing to object to his absence from the hearings.

The Michigan Court of Appeals rejected the claim as follows:

> A defendant's constitutional right to be present is rooted in the Confrontation Clause of the Sixth Amendment. United States v. Gagnon, 470 U.S. 522, 526; 105 S Ct 1482; 84 L.Ed.2d 486 (1985). But a defendant's presence is also a condition of due process to the extent that a fair and just hearing would be thwarted by the defendant's absence. Id. "The right to be present at one's felony trial is one of those rights that only the defendant himself can waive." People v. Montgomery, 64 Mich.App 101, 103; 235 NW2d 75 (1975). But prejudice will not be presumed from a defendant's absence, even where constitutional error has been shown. People v. Morgan, 400 Mich. 527, 536; 255 NW2d 603 (1977). To be entitled to relief, a defendant must demonstrate a reasonable possibility of prejudice from his absence. Id.

>  Although there is no indication that defendant Christian or defendant Hinton personally waived their right to be present, we conclude that appellate relief is not warranted because there is no reasonable possibility that either defendant was prejudiced by their absence during the brief questioning of the jurors by the trial court. In both instances, the defendants' attorneys were permitted to observe the trial court's questioning and communications with the jurors. The communications did not concern any factual or legal issue in the case. The first communication with Juror No. 11 was directed at ascertaining the factual basis for her fear of continuing with deliberations and returning a verdict. The second communication with the remaining 11 jurors occurred after the trial court determined that it was necessary to excuse Juror No. 11 for medical reasons and to replace the juror with an alternate. The second communication was limited to ascertaining whether anything had transpired that would affect the remaining jurors' abilities to be fair and impartial, and to decide the case based on the applicable law and the evidence introduced at trial. The trial court also responded to an inquiry by one juror regarding what to do with notes that the jurors had previously prepared during deliberations. None of the trial court's communications can be characterized as substantive instructions. A substantive instruction encompasses such issues as supplemental instructions on the law. People v. France, 436 Mich. 138, 143; 461 NW2d 621 (1990). The trial court's response to the juror's inquiry did not concern the law or the facts of the case, but rather how the remaining 11 jurors should proceed with the alternate juror. The response is more analogous to an instruction encouraging jurors to continue deliberations, which is administrative in nature. Id.

People v. Christian, 2011 WL 4424347, at *3.

The court of appeals' decision was neither contrary to Supreme Court precedent nor unreasonable. A defendant has a constitutional right to "be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." Kentucky v. Stincer, 482 U.S. 730, 745 (1987). This right, however, "is not absolute, but exists only when his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." United States v. Henderson, 626 F.3d 326, 343 (6th Cir. 2010) (quotation marks omitted)). "In other words, the defendant's presence is not guaranteed when it would be useless, but only to the extent that a fair and just hearing would be thwarted by his

11

absence." Id. (quotation marks omitted). Indeed, the U.S. Constitution "does not require the defendant to be present when his 'presence would be useless, or the benefit but a shadow.'" Cathron v. Jones, 190 F. Supp. 2d 990, 1001 (E.D. Mich. 2002) (quoting Snyder v. Massachusetts, 291 U.S. 97, 106-107 (1934), overruled on other grounds by Malloy v. Hogan, 378 U.S. 1 (1964)). A defendant's presence at a hearing is "largely a matter of form when a defendant's lawyer is present at proceedings that raise largely legal issues." Id. at 1001-1002.

    Here, Petitioner has failed to show that he was absent from any stages of the prosecution where his presence was necessary for him to defend against the charges. Petitioner's first absence involved the trial court ascertaining the basis for Juror 11's fear of reaching a verdict in this case. The second absence involved the trial court questioning the remaining jurors for the limited purpose of determining whether anything had transpired that would affect their ability to be fair and impartial. The trial court also responded to a juror's inquiry concerning what they should do with the notes that they had taken during the deliberations, and he instructed the remaining jurors that they would have to begin their deliberations anew with an alternate juror.

    The trial court did, however, permit Petitioner's counsel to watch the questioning of the jurors via a television monitor from the trial court's chambers. Moreover, a record of the proceedings was made. Under these circumstances, Petitioner has failed to show that he was prejudiced by his absence from the hearing. See United States v. Florea, 541 F.2d 568, 572-573 (6th Cir. 1976) (defendants were not prejudiced by their absence when the district judge excused one juror, substituted an alternate, and sequestered the jury, where the judge carefully prepared a record of the proceedings,

including the testimony of the juror and the court's reasons for excusing him). Additionally, the hearings where Petitioner was not present in the courtroom were not critical stages of trial proceedings.

Because there was no error, it follows that trial counsel was not ineffective for either waiving Petitioner's presence or not objecting to his absence. See United States v. Osterbrock, 891 F.2d 1216, 1219-1220 (6th Cir. 1989) (finding that the petitioner failed to prove that his counsel was deficient for failing to object to the reading of a witness's testimony to the jury by the court reporter in his and his counsel's absence, or that the failure to object was prejudicial). Accordingly, Petitioner is not entitled to relief on his second claim, or the related portion of his third claim alleging ineffective assistance of counsel.

### C. Ineffective Assistance of Counsel

Petitioner's final claim asserts four allegations of ineffective assistance of counsel. Two of the allegations, relating to his right to a public trial and right to be present in the courtroom, have been addressed above. The remaining two allegations concern (1) trial counsel's failure to call Joanna Tedford as an alibi witness, and (2) trial counsel's failure to object to the admission of hearsay evidence.

The Michigan Court of Appeals reasonably rejected both of these allegations on the merits. As to Joanna Tedford, the court of appeals explained:

> Defendant Hinton also argues that trial counsel was ineffective for failing to call Joanna Tedford as an alibi witness at trial. A defense attorney's failure to call a witness can constitute ineffective assistance of counsel only where it deprives the defendant of a substantial defense. People v. Payne, 285 Mich.App 181, 190; 774 NW2d 714 (2009). A substantial defense is one that might have made a difference in the outcome of the trial. In re Ayres, 239 Mich.App 8, 22; 608 NW2d 132 (1999). Here, the record reflects that trial counsel filed a pretrial

13

notice of alibi, which indicated that defendant Hinton would claim that he was with Tedford at the time of the shooting. In addition, it appears that counsel contemplated calling Tedford at trial because her name was mentioned as a potential witness during jury voir dire. During closing argument, defendant Hinton's counsel commented that Tedford "didn't come in," but stated that there was other evidence, including the testimony of Mickey Jones and defendant Joshun, to establish defendant Hinton's alibi.

     A defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel. People v. Carbin, 463 Mich. 590, 600; 623 NW2d 884 (2001). Here, the record discloses that defendant Hinton's counsel was aware of Tedford's status as a potential alibi witness, and contemplated calling her at trial, but does not disclose why Tedford was not called, or what steps trial counsel may have taken to obtain Tedford's appearance. The limited record presented is insufficient to conclude that the failure to call Tedford at trial was due to some deficiency on the part of trial counsel. See People v. Rockey, 237 Mich.App 74, 77; 601 NW2d 887 (1999).

     Furthermore, because there is no record of Tedford's proposed testimony, defendant Hinton cannot establish that the failure to call Tedford deprived him of a substantial defense. Even assuming that she would have testified consistently with Mickey Jones and defendant Joshun, "[t]he number of witnesses a party garners is quite irrelevant in determining where the truth lies." People v. Hagle, 67 Mich.App 608, 617; 242 NW2d 27 (1976). "[T]he presentation of only one witness has the advantage of eliminating the possibility of distracting inconsistencies." Carbin, 463 Mich. at 604. Because the apparent subject matter of Tedford's testimony was supplied by other witnesses, it is not apparent that the failure to call Tedford was either objectively unreasonable or prejudicial. The failure to call Tedford did not deprive defendant Hinton of a substantial defense. Accordingly, this ineffective assistance of counsel claim cannot succeed.

People v. Christian, 2011 WL 4424347, at *13 (footnote omitted).

Well-established federal law requires that defense counsel conduct a reasonable investigation into the facts of a defendant's case, or make a reasonable determination that such investigation is unnecessary. Wiggins v. Smith, 539 U.S. 510, 522-523 (2003); Stewart v. Wolfenbarger, 468 F.3d 338, 354, 356 (6th Cir. 2007). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence." Towns v. Smith, 395 F.3d 251, 258 (6th

Cir. 2005). That being said, decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy. When making strategic decisions, counsel's conduct must be reasonable. Roe v. Flores—Ortega, 528 U.S. 470, 481, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000) ("The relevant question is not whether counsel's choices were strategic; but whether they were reasonable."). The failure to call a known alibi witness can constitute ineffective assistance of counsel. Bigelow v. Williams, 367 F.3d 562, 570 (6th Cir. 2004). Counsel, however, is not required to call a witness whose credibility is questionable. Thurmond v. Carlton, 489 F. App'x 834, 840 (6th Cir. 2012). The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. Chegwidden v. Kapture, 92 F. App'x 309, 311 (6th Cir. 2004).

    The record shows that trial counsel investigated Hinton's alibi defense. During an August 11, 2008, hearing, trial counsel informed the trial court that he found a witness and would file an alibi notice for Hinton. Trial counsel filed an alibi notice that stated Hinton would present Tedford to testify that Hinton was at a particular address when the shooting occurred. Trial counsel indicated during a December 8, 2008, hearing that he filed a statement from the witness. The Michigan Court of Appeals, however, noted that Tedford's affidavit was not part of the trial court record—nothing was attached to the Notice of Alibi when it was filed with the trial court. Ultimately Tedford executed another affidavit in 2010, two years later. In it, Tedford simply states that she understood that she was "supposed to testify" that Hinton was with her, but she does not unequivocally state that Hinton was actually with her during the date and time at issue. As such, Petitioner has not overcome the presumption that counsel's

failure to call Tedford was sound trial strategy. See Roush v. Burt, 313 F. App'x 754, 761 (6th Cir. 2008) (finding no reason to deem counsel ineffective for failing to call a witness where the record showed that counsel had investigated the witness).

In any event, the jury heard Hinton's alibi defense at trial from other witnesses. Jones testified at trial that he was at the Terrace Apartments all day, and saw Joshun around 7:00 that night. Joshun was there when Jones learned that someone was shot at the Regency. Jones testified that he also saw Hinton that night when Hinton came out of Tedford's house after Jones learned about the shooting. Hinton came out to talk to Jones and Joshun. Joshun and Hinton remained in the parking lot until Jones left around 11:00 p.m. Joshun confirmed Jones testimony. Joshun testified at trial that he arrived at the Terrace between 7:30 and 7:45, and Hinton was there. Given that Tedford could not provide Petitioner with an "air-tight" alibi defense any more than Jones or Joshun could, counsel was not ineffective for deciding not to call her to testify at trial. See Moore v. Parker, 425 F.3d 250, 253-254 (6th Cir. 2005).

In sum, the decision of the Michigan Court of Appeals rejecting this claim therefore did not result in an unreasonable application of the clearly established Supreme Court standard. Habeas relief is not warranted on this ground.

As to trial counsel's failure to object to the admission of hearsay testimony, two prosecution witnesses, Marcus Turner and Tobias Gatewood, were cross-examined about prior inconsistent statements they made to the police in which they implicated Petitioner. Petitioner asserts that his counsel was ineffective for failing to object on the grounds that the prior statements were in effect used as substantive evidence, violating the rule against hearsay.

16

Petitioner's co-defendant, Christian, raised the same claim. The Michigan Court of Appeals rejected Petitioner's claim for the same reasons it rejected Christian's claims. As to Christian, the court of appeals explained:

> defense counsel's reasons, if any, for not objecting to the prosecutor's eliciting testimony from Turner and Gatewood regarding the substance of their prior statements are not apparent from the record. Counsel may have concluded, as the trial court ultimately determined when it denied defendant Christian's motion for a new trial, that the testimony was reduced to a "non-event." Counsel also may have determined that raising questions about the credibility of testimony by jail inmates would have some benefit, especially when another jail inmate, Moore, offered testimony regarding defendant Christian's own statements that linked him to the shooting. Trial counsel's reasons for not objecting to the substance of Sergeant Gaspar's testimony regarding the content of Turner's and Gatewood's statements also are not apparent from the record. It is clear, however, that the parties understood, and that the jury was instructed, that the statements were not admissible for a substantive purpose. In addition, as discussed in part V of this opinion, the testimony was ultimately relevant to Sergeant Gaspar's investigative measures, which had been attacked by defendants. But even assuming that trial counsel's failure to object on the basis of improper impeachment fell below an objective standard of reasonableness, defendant Christian has not met his burden of showing a reasonable probability that, but for counsel's failure to object, the result of the proceeding would have been different. As discussed in part V of this opinion, we may presume that the jury followed the trial court's instructions that the evidence was not to be considered for its substance.

People v. Christian, 2011 WL 4424347, at *10.

The court of appeals' conclusion is not unreasonable. As stated above, to show prejudice under Strickland, a habeas petitioner must demonstrate that, but for the alleged error of his trial counsel, there is a reasonable probability that the proceeding would have been different. Because the Michigan Court of Appeals determined that the evidence was properly admitted, Petitioner is unable to establish that he was prejudiced by counsel's failure to object to these questions. See Slagle v. Bagley, 457 F.3d 501, 528 (6th Cir. 2006). Accordingly, Petitioner is not entitled to habeas relief with respect

17

to this allegation of ineffective assistance of counsel.

## V.  Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).  A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. Castro v. United States, 310 F.3d 900, 901 (6th Cir. 2002).

Here, jurists of reason would not debate the Court's conclusion that Petitioner is not entitled to habeas relief on any of his claims.  Thus, he is not entitled to issuance of a certificate of appealability.

## VI.  Conclusion

For the reasons stated above, the petition is DENIED.  A certificate of appealability is DENIED.  This case is DISMISSED.

SO ORDERED.

                                                      S/Avern Cohn  
                                                      AVERN COHN  
                                                      UNITED STATES DISTRICT JUDGE

Dated: July 2, 2015  
      Detroit, Michigan